IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

Civil Case No. 1:18-CV-144

| | |
|---|---|
| ESTATE OF BRANDON CHASE COX, by and through Co-Administrators TONY COX and REBA RENEE COX,<br><br>    **Plaintiffs,**<br><br> vs.<br><br>CHARLES S. MCDONALD, in his official capacity as Sheriff of Henderson County, North Carolina; SOUTHERN HEALTH PARTNERS, INC.; and MICHELLE RUSSELL,<br><br>    **Defendants.** | **COMPLAINT** |

Plaintiffs, complaining of Defendants, say and aver as follows:

## JURISDICTION

1. This action seeks remedies arising under 42 U.S.C. § 1983 for civil rights abuses, committed under color of state law, by the Defendants who, without due process, deprived a young man of his life in violation of the Constitution.

2. Pursuant to 28 U.S.C. § 1331 and section 1343, this Court has original jurisdiction over Plaintiffs' civil rights claim brought under 42 U.S.C. § 1983.

3. Plaintiffs respectfully request that the Court exercise its discretion, under 42 U.S.C. § 1988, to allow Plaintiffs recovery of their reasonable attorney's fees as part of the costs.

4.     Plaintiffs' remaining causes of action are brought under the laws of the State of North Carolina and are purely state-law claims, which lack any federal questions or issues, nor do they require any application of federal law.

5.     Because the pendent state-law claims involve the same nucleus of facts as Plaintiffs' section 1983 civil rights claim, this Court has supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4.

## VENUE

7.     The facts, conduct, and harm giving rise to this action, all took place within the Western District of North Carolina.

8.     Venue is proper in the Western District of North Carolina, pursuant to 28 U.S.C. § 1391(b) and the Court's pendent jurisdiction.

## PARTIES

9.     Brandon Chase Cox ("Brandon"), was born September 8, 1991 and died September 8, 2014.

10.     At all relevant times, Brandon was a citizen and resident of Henderson County, North Carolina.

### Brandon's Estate

11.     Tony Cox and wife Reba Renee Cox ("Renee Cox") are Brandon's biological parents and were appointed as co-administrators of the Estate of Brandon

Cox (the "Estate) by Order of the Clerk of Superior Court for Henderson County, North Carolina.

12.     A true and accurate copy of the Letters of Administration issued by the Henderson County Clerk of Superior Court to Tony Cox and Renee Cox is attached to this Complaint as **EXHIBIT A**.

13.     As the duly appointed administrators and surviving heirs of Brandon's Estate, Tony Cox and Renee Cox are authorized to bring this action, pursuant to the wrongful death laws of North Carolina, and are proper parties for purposes of prosecuting these claims on Brandon's behalf, as provided by Rule 17 of the Federal Rules of Civil Procedure.

### County Sheriff

14.     The Henderson County Sheriff's Office (the "Sheriff's Office") is a political subdivision of the County of Henderson, North Carolina.

15.     Defendant Charles S. McDonald ("Sheriff McDonald"), in his official capacity as Sheriff of Henderson County, is the chief law enforcement official of the county, under the laws of the State of North Carolina, as well as final policymaker for the Sheriff's Office.

16.     At all relevant times, Sheriff McDonald was the publicly elected Sheriff of Henderson County and was acting within the course and scope of his employment and under color of law.

17.     Sheriff McDonald is and was the chief official and final policymaker in charge of all matters concerning the management, operation, supervision, and

control of the Henderson County Detention Center (the "County Jail" or simply "Jail").

18. At all relevant times, Sheriff McDonald was the chief official and final policymaker in charge of recruitment, hiring, retention, management, training, and supervision of all personnel and positions at the Sheriff's Office and County Jail. Sheriff McDonald's authority encompassed the entire chain of command, including, without limitation, every deputy, supervisor, command officer, civilian staff-member, jailer, and contractor who was employed by or within the Sheriff's Office and/or County Jail.

19. As the final policymaker and chief official in command of the Sheriff's Office, Sheriff McDonald was responsible for assessing, promulgating, and implementing all policies, customs, usages, and procedures concerning the administration of the County Jail.

20. Pursuant to N.C. Gen. Stat. § 162-22, *et seq.*, Sheriff McDonald held final responsibility for the operation of the County Jail, including the custody and care of all inmates who were housed there.

21. Pursuant to N.C. Gen. Stat. § 162-24, *et seq.*, Sheriff McDonald bore final responsibility for ensuring that all official duties were being properly discharged within the County Jail, regardless of whether he performed such duties directly or delegated them to the deputies, contractors, agents, and staff who were hired or appointed to assist him.

22.    Consistent with the powers and duties of his office, Sheriff McDonald had an obligation to ensure that effective policies and procedures were in place, which would identify emerging safety issues and correct them within a reasonably prudent timeframe.

23.    As final policymaker, Sheriff McDonald owed inmates at the County Jail an affirmative duty to implement policies and procedures to ensure adequate and timely access to qualified healthcare providers and effective medical treatment.

24.    By virtue of his public office, Sheriff McDonald was responsible for ensuring that deputies, staff, agents, and contractors who worked in the County Jail obeyed and complied with all applicable laws, regulations, and rules, including, without limitation, those pertaining to the conditions, safety, health, supervision, treatment, and medical care of inmates.

25.    At all relevant times, Sheriff McDonald held ultimate responsibility for safeguarding the health and well-being of each inmate who was housed in the County Jail.  This obligation included making sure that all personnel involved in the daily operation of the Jail carried out their duties in satisfaction of, and conformity with, all applicable laws, regulations, and rules established by and for the State of North Carolina and the United States of America.

26.    As described in further detail below, Sheriff McDonald actively participated in, condoned, contributed to, or carelessly and deliberately failed to prevent the intentional, wrongful, and reckless acts of those deputies, contractors,

staff, agents, and supervisory personnel who were on-duty while Brandon was confined at the County Jail.

## Medical Providers

27.    Upon information and belief, Defendant Southern Health Partners, Inc. ("Southern Health Partners") is a Delaware corporation that maintains its principal place of business in Chattanooga, Tennessee.

28.    Upon information and belief, Southern Health Partners is registered with the North Carolina Secretary of State as a foreign corporation that conducts business in North Carolina and maintains a registered agent authorized to accept service of process in this state.

29.    Upon information and belief, Southern Health Partners is a privately held company that engages in the for-profit business of contracting to provide health care services to inmates.

30.    Upon information and belief, Southern Health Partners entered a contract to provide health care services to inmates housed at the County Jail, and that contract was in effect during Brandon's confinement.

31.    Upon information and belief, Defendant Michelle Russell ("Nurse Russell") is a citizen and resident of Henderson County, North Carolina.

32.    At all relevant times, Nurse Russell was a North Carolina licensed practical nurse, and she held herself out as such.

33.    Southern Health Partners employed Nurse Russell to provide medical services and nursing care to inmates confined in the County Jail.

34.     During Brandon's confinement at the County Jail, Southern Health Partners and Nurse Russell were acting as agents and/or employees of Sheriff McDonald.

35.     As the official with ultimate decision-making authority regarding the day-to-day operation of the County Jail, Sheriff McDonald held the power to determine, direct, manage, supervise, and control the respective duties, tasks, rules, privileges, work schedules, procedures, and resources affecting all personnel who were employed at the County Jail, including Nurse Russell.

36.     At all relevant times, Nurse Russell was operating within the course and scope of her agency and employment relationships with Southern Health Partners and Sheriff McDonald.

37.     Southern Health Partners is vicariously liable for the acts, omissions, and conduct of Nurse Russell as alleged herein.

38.     Each of the Defendants had an affirmative duty to ensure the adequate provision and prompt availability of necessary medical care for inmates who were suffering with a serious health condition.

39.     During Brandon's confinement in the County Jail, there were numerous instances in which the Defendants, whether directly or through their employees and agents, were on-duty, received adequate notice of Brandon's serious medical condition, and observed Brandon's severe pain, anguish, and suffering.

40.    At all relevant times, the Defendants were acting under color of law—that is, under the color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of North Carolina and County of Henderson.

41.    At various times as alleged herein, the Defendants, either separately or in concert with each other, engaged in acts or omissions constituting a deprivation of the constitutional rights, liberties, privileges, and immunities of Brandon.  Such acts and omissions were carried out under color of state and/or local law, had no justification or excuse in law, but were instead illegal, improper, and malicious in nature.

## First Action

42.    On September 6, 2016, Plaintiffs filed suit against Defendants in this Court under Civil Case No. 1:16-CV-300 (the "First Action").  In that proceeding, Plaintiffs asserted the same claims for relief that are alleged in this Complaint — *i.e.*, (1) breach of statutory duties of safe-keeping arising under Chapter 153A of the N.C. General Statutes, Title 10A of the N.C. Administrative Code, and state common law of North Carolina; (2) negligence under N.C. common law; (3) medical negligence in accordance with Rule 9(j) of the N.C. Rules of Civil Procedure and Rule 702 of the N.C. Rules of Evidence; and (4) civil rights violations arising under 42 U.S.C. § 1983.

43.    The First Action was dismissed by Stipulation of Voluntary Dismissal "without prejudice" on May 24, 2017.

44. For purely state-law claims, substantive North Carolina rules shall apply. This includes statutes of limitation, tolling provisions, and savings provisions, which would be applied by a N.C. state court. Here, Plaintiffs' state-law claims—*i.e.*, first, second, and third claims for relief—were originally filed within the statute of limitations, were then dismissed without prejudice, and are now being filed within the one-year savings period for doing so under Rule 41 of the North Carolina Rules of Civil Procedure.

45. Further, even though Plaintiffs' section 1983 civil rights claim implicates a federal law, this claim lacks any federal statute of limitations and therefore the North Carolina Rules related to limitations, tolling, and savings provisions must be applied. Hence, the section 1983 claim is also timely re-filed.

## FACTUAL ALLEGATIONS

46. On July 27, 2014, Brandon was found hanging by his neck from a dog leash. Brandon's suicide attempt resulted in serious injuries, which required him to be hospitalized for several days at Richland Memorial Hospital in Columbia, South Carolina.

47. On July 31, 2014, Brandon was transferred to Palmetto Baptist Medical Center, where he continued receiving inpatient care pursuant to an emergency involuntary commitment for mental illness.

48. On August 12, 2014, Brandon's involuntary commitment ended, and he was discharged from the hospital.

## Brandon's Arrest

49.     On September 1, 2014, the Fletcher Police Department dispatched officers to a disturbance call at the Econo Lodge in Fletcher, NC.

50.     Officer J. Z. Warren was one of the officers who responded to the hotel disturbance.  When he arrived on scene, Officer Warren encountered Brandon and arrested him for drug possession after a search turned up cocaine and paraphernalia on his person.

51.     Apparently due to Brandon's erratic behavior, police called an ambulance to the scene.  Brandon was then taken to Park Ridge Hospital in Hendersonville, NC where he was medically evaluated and cleared of any major issues concerning his physical health.

## County Jail

52.     Sometime between 4:00 and 5:00 AM on September 1, 2014, Brandon was booked at the County Jail, and then placed in a temporary holding cell.

53.     On September 2, 2014, Nurse Russell met with Brandon in the temporary holding cell.  Nurse Russell recorded some handwritten notes about this initial meeting.  In these notes, she comments that Brandon was "very incoherent," insofar that he was "unable to provide personal information" even when Nurse Russell and Cpl. Brian Helton tried asking Brandon "several times" whether he "could give any information."   Nurse Russell concludes her September 2nd note by documenting that Brandon "remains very confused."

54.    On September 3, 2014, Nurse Russell met with Brandon again. During this visit, Brandon told her that he was fearful and needed to see a psychiatrist.  Brandon also informed Nurse Russell that he had attempted suicide by hanging himself approximately one month earlier.  Nurse Russell then directed Brandon to sign a purported "Contract for Safety," as well as a release form authorizing her to obtain his medical records from the recent hospitalization and involuntary commitment in Colombia, SC.

55.    At approximately 11:00 AM on September 3, 2014, Nurse Russell faxed the request for Brandon's medical records to his providers in South Carolina.  Nurse Russell received the records by fax around 3:00 PM that same afternoon.

56.    The hospital records confirmed that Brandon had attempted suicide by hanging himself only a month before, and he required a prolonged hospital stay and inpatient psychiatric treatment before his mental illness stabilized.  Brandon's records also revealed a longer history of outpatient treatment for depression, bi-polar disorder, and anxiety.  The medical records document Brandon describing himself as "helpless, hopeless, and worthless."   They also reveal that he had been incoherent before, and experienced difficulty with responding to his ER doctors following his recent suicide attempt in July 2014.

57.    Sometime between September 3rd and September 6th, 2014, Brandon was removed from the observation area and placed in a regular housing cell.

58.    There are no dictation notes or medical record entries documenting the reason Brandon was removed from observation.  Likewise, there are no records of

any follow-up evaluations, nor any observation notes from the healthcare staff. Instead, it appears that Brandon was moved to a general housing cell and forgotten inasmuch that he was not seen again by any medical personnel.

59.    On September 7, 2014, at approximately 1:16 PM, detention officers at the Jail discovered Brandon unresponsive in his cell.  Brandon had hung himself with a sheet after being unobserved for a period of about 40 minutes.

60.    Upon discovering Brandon, the Jail staff attempted CPR on him, but they failed to inspect and clear his airway beforehand, which caused vomit to be forced into Brandon's lungs while they attempted to revive him.

61.    At approximately 1:29 PM on September 7, 2014, fire department personnel and EMS paramedics arrived at the Jail, and they discovered the vomit clogging Brandon's airway when they attempted to intubate him.

62.    Brandon was then transported by ambulance to the emergency department at Mission Hospital in Asheville, North Carolina.

63.    On September 8, 2014, Brandon died as a result of the injuries he sustained from the incident at the Jail.

64.    Brandon's death occurred as a direct and proximate result of the actions and omissions of the Defendants as complained of herein.

65.    Sheriff McDonald is not insulated from liability by the doctrines of governmental or sovereign immunity because said doctrines cannot bar Plaintiffs' federal and state statutory claims for relief, as alleged herein, inasmuch that these types of claims fall outside the purview of said defenses and therefore the defenses

cannot apply here; and, even if they could apply, Defendant has effectively waived any defense of governmental or sovereign immunity by purchasing a general liability insurance policy pursuant to N.C. Gen. Stat. § 153A-435. Thus, Sheriff McDonald is liable for, and this Court may properly exercise jurisdiction over, the acts and omissions alleged herein, regardless of whether such acts or omissions occurred in the Defendant's exercise of governmental functions.

## FIRST CLAIM FOR RELIEF: BREACH OF DUTY OF SAFEKEEPING
### (against Sheriff McDonald)

66.     At all relevant times, Sheriff McDonald, individually and through his employees and agents, had a duty to provide continuous supervision of prisoners housed at the Jail, including an obligation to maintain safe custody and to be at all times informed of the prisoners' health and emergency medical needs.

67.     This was an affirmative duty, arising under and pursuant to N.C. Gen. Stat. § 153A-224, and one which was non-delegable pursuant to § 162-24.

68.     During the period of Brandon's confinement at the Jail, Sheriff McDonald, individually and through his employees and agents, had a non-delegable duty to safely house Brandon and to adequately provide for his health and welfare, said duties arising under and pursuant to N.C. Gen. Stat. § 153A-225.

69.     Upon information and belief, Sheriff McDonald was negligent and breached his duty in one or more of, but not limited to, the following ways:

   a.     use of improper security and supervision procedures regarding Brandon;

b.      failure to follow rules and guidelines of Henderson County and/or the Sheriff's Office concerning security operations at the Jail and those involving Brandon;

c.      failure to carefully monitor a mentally ill and suicidal prisoner;

d.      failure to follow security procedures in supplying suicide-enabling materials to Brandon, such as a bed sheet, and permitting him use and unsupervised possession of these materials, particularly in light of his known suicidal tendencies;

e.      failure to correct dangerous conditions in the County Jail;

f.      failure to properly assess the mental condition and risk of self-harm or suicide of Brandon;

g.      authorizing nurses and/or other unqualified personnel to decide when to add or remove inmates from suicide watch;

h.      failure to properly and adequately train County Jail personnel to safely administer CPR to inmates, which includes training personnel to inspect and clear a patient's airway of any obstructions, such as vomit, prior to initiating CPR;

i.      failure to adequately monitor Brandon, and otherwise provide an environment which would minimize the risk of suicide or self-harm by him; and

j.      failure to promulgate and implement proper policies and procedures for the protection of inmates at the Jail, including Brandon, who are suffering from mental illness or are otherwise at risk for self-harm or suicide.

70.    Upon information and belief, Sheriff McDonald was informed of Brandon's condition and suicide risk during his confinement at the jail, but Sheriff McDonald personally failed to protect Brandon from such dangers and instead allowed him to be removed from the observation area, all in violation of the Sheriff's non-delegable duties.

71.    Only a few days after Brandon's death, the North Carolina Department of Health and Human Services ("DHHS"), through its Division of

Health Service Regulation, began investigating the facts of Brandon's death and inspected the conditions existing at the County Jail.

72.     DHHS reviewed video surveillance footage from the day of Brandon's hanging and discovered that jailers did not complete any inmate supervision rounds from 11:34 AM until 1:20 PM — a period of at least 1 hour and 46 minutes. Their failure to make a supervision round for that length of time clearly constitutes a violation of North Carolina law, and it endangers the health and safety of inmates.

73.     In particular, 10A N.C. Admin. Code 14J .0601(a) requires that detention officers make supervision rounds and directly observe each inmate in-person at least twice per hour on an irregular basis. Sheriff McDonald failed to ensure that this mandatory standard was being met. If it had been followed, then Brandon would have lacked ample time or opportunity to rig a sheet and hang himself to the point of fatal injuries.

74.     Furthermore, 10A N.C. Admin. Code 14J .0601(c) requires that detention officers directly observe, in-person and at least four times per hour, each inmate who displays erratic or unsafe behavior. This is the requirement that applies to at-risk inmates, and certainly it applied to Brandon. But-for the Defendants' collective failure to properly identify Brandon as an at-risk inmate, and but-for the lack of policies requiring staff to make their state-mandated supervision rounds, Brandon would not have had ample time or opportunity to hang himself at the County Jail.

75. DHHS inspectors discovered that the jail's video monitoring and cell check system was inoperable on September 7 and September 8, 2014, and the system was allegedly "scheduled for repair." This unaddressed equipment issue is evidence of grossly inadequate and deliberately indifferent policymaking and management on the part of Sheriff McDonald. If such monitoring equipment had been working, then a jailer could have been alerted to Brandon's suicide efforts well before Brandon would have been able to harm himself.

76. As a direct and proximate result of Sheriff McDonald's breach of the duty to safely keep Brandon, he died and consequently Tony Cox and Renee Cox incurred injuries including, but not limited to, loss of companionship, grief, pain and suffering, and emotional distress, and therefore Plaintiffs are entitled to an award of compensatory and special damages.

77. As a direct and proximate result of Defendants' breach of their duty to safely keep Brandon, he died and the Plaintiff Estate incurred loss, including, but not limited to, unrealized future earnings, loss of life and enjoyment of life, funeral and burial expenses, and medical expenses, and therefore Plaintiffs are entitled to an award of compensatory and special damages.

## SECOND CLAIM FOR RELIEF: COMMON LAW NEGLIGENCE
### (against all Defendants)

78. Defendants, both individually and through their employees, owed a duty of reasonable care for the safety and well-being of individuals in their custody and a duty of reasonable care in the operation of the County Jail and its infirmary.

79. During his confinement at the County Jail, Brandon had a serious medical need that had been previously diagnosed by a physician and other mental health professionals.

80. Furthermore, Brandon's serious medical need was so obvious that even a lay person would easily recognize the necessity for mental health treatment and suicide prevention measures. Accordingly, Defendants are also liable under the doctrine of *res ipsa loquitor* for their failure to provide adequate life-saving treatment to Brandon.

81. Defendants directly breached their common law duties of care by providing Brandon with suicide-enabling items and allowing for his unsupervised use and possession of the same, and also by administering CPR in an unusually dangerous and careless manner, that is by failing to inspect or clear Brandon's airway of vomit before commencing CPR.

82. Sheriff McDonald and the other Defendants failed to satisfy their duty to provide adequate medical care to Brandon in violation of North Carolina law.

83. Sheriff McDonald failed to operate the Jail in a safe manner and failed to adopt a medical plan that was adequate to protect inmates' health and welfare, including, particularly, the health and welfare of Brandon.

84. As a proximate result of the Defendants' negligent acts, omissions, and reckless indifference, Brandon lost his life.

85. Defendant Southern Health Partners is responsible for the acts and omissions of its employees and agents, including, but not limited to, Nurse Russell, under the doctrines of respondeat superior and agency.

86. As a direct and proximate result of Defendants' negligence, which caused or contributed to the wrongful death of Brandon, Tony Cox and Renee Cox incurred injuries including, but not limited to, loss of companionship, grief, pain and suffering, and emotional distress, and therefore Plaintiffs are entitled to an award of compensatory and special damages.

87. As a direct and proximate result of Defendants' negligence, which caused or contributed to the wrongful death of Brandon, the Plaintiffs incurred injuries, including, but not limited to, loss of earnings, loss of life and enjoyment of life, funeral and burial expenses, and medical expenses, for which the Plaintiffs are entitled to an award of compensatory and special damages in an amount that exceeds twenty-five thousand dollars ($25,000.00), exclusive of costs and interest.

## THIRD CLAIM FOR RELIEF:  MEDICAL NEGLIGENCE
### (against Southern Health Partners and Nurse Russell)

88. At all relevant times, Southern Health Partners and Nurse Russell expressly and implicitly represented to Brandon and the general public that they practiced medicine in a skilled and proper manner, and held themselves out to be qualified practitioners in the field of medicine and health care, having the professional learning, skill, and ability possessed by other professionals in the same or similar communities at the time of the acts alleged.

89. At all relevant times, Defendants had a duty to provide Brandon with medical care and treatment in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances.

90. In providing Brandon with medical and mental health care, Defendants failed to exercise reasonable care and diligence in the application of their knowledge and skill to Brandon's care; failed to use their best judgment in the treatment and care of Brandon; and failed to provide medical care in accordance with the standards of practice among members of the same health care profession with similar training and experience in the same or similar communities under the same or similar circumstances, in the following respects:

    a.    failure to properly assess the mental condition and risk of self-harm or suicide of Brandon;

    b.    failure to adequately monitor Brandon, and otherwise provide an environment which would minimize the risk of suicide or self-harm by him;

    c.    failure to provide Brandon with necessary mental health treatment such as counseling, therapy, medication, and drug withdrawal treatment;

    d.    removing Brandon from heightened observation prematurely and without adequate cause or documentation in Brandon's medical notes;

    e.    failure to recognize and classify Brandon as a high-risk inmate who should have been placed under heightened observation protocols with constant, remote video monitoring and in-person supervision rounds occurring at least four times per hour;

f. failure to implement and follow appropriate mental health procedures by supplying suicide-enabling materials to Brandon, such as a bed sheet, and permitting him use and unsupervised possession of these materials, particularly in light of his known suicidal tendencies;

g. failure to properly document Brandon's condition in his written medical notes and failure to adequately observe or supervise Brandon; and

h. failure to protect Brandon from his suicidal tendencies, despite Defendants' knowledge of such tendencies and the obvious risk and gravity of harm associated with the same.

91. As a direct and proximate result of the aforementioned negligence and conduct of Defendants, Brandon did not receive appropriate medical care, mental health treatment, safety precautions, or supervision and has suffered from the following injuries and damages, including but not limited to:

a. severe pain and suffering, leading up to the moment of death;

b. wrongful death;

c. mental illness resulting in physical injury and suicide; and

d. medical expenses incurred as a result of the injury and trauma.

92. Plaintiffs are entitled to recover an award of damages from Defendants in an amount that exceeds twenty-five thousand dollars ($25,000.00), exclusive of interest and costs.

93. As joint tortfeasors who are engaged in a mutual enterprise and common emergency medicine practice, the Defendants likewise share joint and several liability for the negligent acts and omissions complained of herein.

94. The medical care referred to herein, and all medical records pertaining to the alleged negligence that were available to the Plaintiffs after reasonable

inquiry, have been reviewed by an expert who is reasonably expected to qualify as an expert witnesses under Rule 702 of the Rules of Evidence, and who is willing to testify that the medical care rendered to Brandon by the Defendants did not comply with the applicable standard of care, pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure.

95.    This expert's review of the negligent medical care at issue, along with her certification that Defendants did not comply with the applicable standard of care, pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, was conducted prior to the filing of the First Action, which was timely under the statute of limitations. This state-law medical negligence claim relates back to the date that the First Action was filed—this being September 6, 2016—whereas it is being re-filed within the one-year savings period for doing so, as provided by Rule 41(a) of the North Carolina Rules of Civil Procedure. The same expert reviewed the medical care again prior to the filing of this action, and her expert opinion remains the same as before—that is, Defendants failed to comply with the applicable standard of care, and the expert is willing to testify as such..

## FOURTH CLAIM FOR RELIEF:  42 U.S.C. § 1983
### (against Sheriff McDonald and Nurse Russell)

96.    The Defendants engaged in reckless, extreme and outrageous, and/or deliberately indifferent conduct, which proximately caused or contributed to Brandon's death.

97.     Southern Health Partners and its employee Nurse Russell, effectively became government actors for purposes of 42 U.S.C. § 1983 by contracting with Sheriff McDonald and the Sheriff's Office, engaging in joint activity with said officials, and becoming so closely intertwined with said officials' conduct and duties related to health and safety operations at the Jail, such that it can be said that the actions of said Defendants, Southern Health Partners and Nurse Russell, are attributable to Sheriff McDonald and these Defendants have taken on the role of government officials themselves.

98.     The acts and omissions of the Defendants, as alleged and described herein, deprived Brandon of his right to life and his other rights, securities, and liberties secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, including, but not limited to, the following specific rights and constitutional freedoms, as made actionable pursuant to 42 U.S.C. § 1983, constituting deliberate indifference to:

      a.    his right to life and his right to due process, secured by the Fifth, Eighth, and Fourteenth Amendments;

      b.    his right to freedom from cruel and unusual punishment, secured by the Eighth Amendment;

      c.    his right to freedom from unreasonable risk of harm, secured by the Fifth, Eighth, and Fourteenth Amendments;

      d.    his right to receive reasonable and adequate care, including his right to reasonable precautions against the risk of suicide or self-harm, secured by the Fifth, Eighth, and Fourteenth Amendments;

      e.    breach of duty to timely inform the appropriate personnel of the Jail regarding a prisoner's need for reasonable and necessary accommodations to protect him from harm; and

      f.     dereliction of duty to institute reasonable procedures and precautions to protect the decedent from the risk of suicide or self-harm.

99. The constitutional claims of the decedent survive his death pursuant to 42 U.S.C. § 1988 and the Wrongful Death laws of North Carolina, making his claims actionable through his heirs and his estate.

100. The deprivation of constitutional and statutory rights, privileges, and protections, as complained of herein, occurred as a result of, during, or as a foreseeable consequence of, the execution of the policies, customs, or usages of the Sheriff's Office and Sheriff McDonald's policies, representing a deliberate or conscious choice by Sheriff McDonald, and which were adopted or maintained in deliberate indifference to the rights and interests of the citizens of Henderson County, North Carolina, including deliberate indifference to the health and safety of inmates at the County Jail, including the decedent, which ratify unlawful acts and omissions by its employees and officers, including, but not limited to, the following policies, customs, or usages concerning the care of inmates held in the Jail:

      a.     failure to properly assess and monitor inmates who are at risk of suicide or self-harm;

      b.     the policy, custom, or usage of ignoring, or failing to respond to, inmates at risk for suicide or self-harm;

      c.     failing to properly assess and monitor inmates at the Jail who are at risk of suicide or self-harm;

      d.     a practice of providing inadequate training and supervision in the identification and monitoring of inmates at the Jail who are at risk of suicide or self-harm;

      e.     deliberate failure to enforce rules and guidelines of the Sheriff's Office and the Sheriff, concerning the provision of reasonable

and adequate monitoring and preventative measures to inmates at the Jail who are at risk of suicide or self-harm;

f.  a policy of hiring unqualified and untrained employees;

g.  failure to provide qualified and competent psychiatric counseling to known suicidal inmates; and

h.  failure to adequately train Jail personnel in the safe and effective administration of life-saving CPR techniques.

101. The policies and conduct described above were each proximate causes of Brandon's death, representing an unconstitutional policy of the Henderson County Sheriff's Office and of Sheriff McDonald in failing to perform proper assessment, identification, and protective measures for inmates at the Jail who are at risk for suicide or self-harm.

102. The policies, customs, or usages of Sheriff McDonald and the Sheriff's Office, as alleged herein, deprived the Plaintiff Estate of its rights, security, and liberties guaranteed by the United States Constitution, made actionable pursuant to 42 U.S.C. § 1983.

103. This claim for relief, arising under and pursuant to 42 U.S.C. § 1983, is hereby brought against Sheriff McDonald, in his official capacity as Sheriff of Henderson County, North Carolina.

104. Sheriff McDonald is directly responsible for the acts and conduct complained of herein inasmuch that he was made aware of Brandon's serious medical need, but thereafter refused to provide Brandon with adequate supervision and permitted Brandon to be removed from suicide watch, thereby denying him critical mental health treatment and enabling him to commit suicide.

105.   As the county's chief law enforcement officer, and as the principal administrator who is responsible for jail health policies and staff training, Sheriff McDonald had a non-delegable, non-waivable duty to provide for the care and safety of all inmates housed at the Jail, including Brandon, which meant a duty to provide adequate medical training to jail employees and health care contractors, and for implementing health and safety guidelines adequately addressed to the mental health needs of inmates.

106.   In this case, Sheriff McDonald deliberately failed to satisfy these obligations to care for his inmates, even though the Sheriff and his employees had knowledge, via the medical records they received and Brandon's own admissions to said personnel, that Brandon had a serious medical need.

107.   Nurse Russell also assumed these same obligations and duties to Brandon by virtue of her contractual relationship and agreement with Sheriff McDonald and the Sheriff's Office.

108.   Hence, Nurse Russell was likewise deliberately indifferent to the safety and health of Brandon insofar that she was aware of his serious medical need, yet refused to properly treat Brandon or to adequately provide for his ongoing health and safety at the Jail.

109.   The repeated acts of deliberate indifference to Brandon's serious medical needs by Sheriff McDonald and Nurse Russell, while he was under their care, responsibility, control and supervision as an inmate of the County Jail, constituted a violation of Brandon's right to be free from cruel and unusual

punishment under the Eighth Amendment of the United States Constitution, as made applicable to the states and local governments through the Due Process Clause of the Fourteenth Amendment.

110. At all relevant times, these Defendants created an official policy and/or environment that implicitly authorized Defendants, their subordinates and associates, to systematically ignore inmates' needs for medical services, deny services when requested, and prevent or hinder inmates from receiving proper and adequate medical services, particularly mental health treatment, in a timely manner.

111. Sheriff McDonald and Nurse Russell discharged their official duties and committed such acts and omissions as to evince that they were willful, wanton and reckless, and carried out with deliberate disregard for Brandon's constitutional rights.

112. All of the acts alleged herein were done by Sheriff McDonald and Nurse Russell under color, authority, and pretense of the statutes, ordinances, regulations, customs, and usages of the State of North Carolina, and under the authority of their offices, while they were carrying out their duties with respect to the administration of Brandon's custody and care in the County Jail.

113. Any reasonable person would have known that the conduct of Defendants clearly violated established constitutional rights of the Plaintiff under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution as set forth above.

# DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray this Court for the following relief:

1. That the Court find for Plaintiffs against Defendants on all claims;

2. That the Court enter judgment against Defendant Charles S. McDonald, in his official capacity as Sheriff of Henderson County, NC, for Defendant's breach of his North Carolina statutory duty of safe-keeping, and award Plaintiffs recovery of all their direct, compensatory, and special damages, together with all incidental and consequential damages, in an amount in excess of $25,000.00;

3. That the Court enter judgment against all Defendants, jointly and severally, for their negligence and award Plaintiffs recovery of all their direct, compensatory, and special damages, together with all incidental and consequential damages, in an amount in excess of $25,000.00;

4. That the Court enter judgment against Defendants Southern Health Partners, Inc. and Michelle Russell for their medical negligence, and award Plaintiffs recovery of all of their direct, compensatory, and special damages, together with all incidental and consequential damages, in an amount in excess of $25,000.00;

5. That the Court enter judgment against all Defendants, jointly and severally, in accordance with 42 U.S.C. § 1983, for their violations of Brandon Chase Cox's civil rights and award Plaintiffs recovery of all of their direct, compensatory, and special damages, together with all incidental and consequential damages, in an amount in excess of $25,000.00;

6. That the costs of this action be taxed against the Defendants;

7. That Plaintiffs have and recover such additional damages as Plaintiffs may substantiate through evidence and under North Carolina law;

8. For pre-judgment and post-judgment interest, as may be recoverable under North Carolina law, on any award granted to Plaintiffs herein;

9. That Plaintiffs have and recover their reasonable attorneys' fees, as may be awarded under 42 U.S.C. § 1988, should they prevail with enforcing their section 1983 civil rights claim;

10. For a trial by jury on all material issues of fact; and

11. For such other and further relief that the Court deems just and proper.

Respectfully submitted,

Dated:  May 24, 2018.

*s/ Brian W. Sharpe*

Brian W. Sharpe
NC Bar No. 51203
brian@avl-law.com

Joseph C. Bowman
NC Bar No. 38439
bowman@avl-law.com

SHARPE & BOWMAN, PLLC
7 N. Main Street
Marshall, NC 28753
Phone:  (828) 649-8322
Fax:  (828) 649-8377

*Attorneys for Plaintiffs*